AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

United States of America
v.
Shricea Nikita Jana Lopez

Defendant(s)

Case No. MJ-23-461-SM

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 13, 2023 in the county of McClain in the Western District of Oklahoma, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Fentanyl with Intent to Distribute |

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Jeremy Epp, Drug Enforcement Administration (DEA).

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

JEREMY EPP, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 14, 2023

[signature]
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

WESTERN DISTRICT OF OKLAHOMA
OKLAHOMA CITY, OKLAHOMA

**STATE OF OKLAHOMA )**
**)**
**COUNTY OF OKLAHOMA )**

**AFFIDAVIT**

I, Jeremy D Epp, a Special Agent (SA) of the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

1. I am "an investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed by the DEA since August 2018. After successfully completing the DEA Basic Agent Academy in Quantico, Virginia, I was assigned to the DEA Oklahoma City District Office.

3. Through my training and experience, I have become familiar with the methods and operation of drug distributors, including their common organizational structures, use of violence, methods of distributing, storing, and transporting drugs, and methods of collecting and laundering drug proceeds.

4. During my employment in law enforcement, I have received training and conducted investigations related to illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and others. I have participated in many aspects of drug investigations, including but not limited to: surveillance, search warrants, arrests, reviewing recorded conversations and drug records, and debriefing defendants, informants, and witnesses who have personal knowledge about major narcotic-trafficking organizations.

5. I have had conversations with and been in the company of other experienced local, state, and federal law enforcement officers as well as prosecuting attorneys representing both state and federal systems concerning narcotics and dangerous drug trafficking activities and criminal violations. I also worked in the company of other experienced law enforcement officers and have discussed their investigative techniques and experiences with them. In the course of investigations, which I have been party to, I have become familiar with the clandestine business practices of drug traffickers and illicit drug traffickers.

6. I have been involved in numerous narcotic investigations on the state and federal level which have resulted in apprehension of persons on narcotic and narcotic related charges during my career in law enforcement.

7. Based upon the following facts, I believe that probable cause exists to show that **Shricea Nikita Jana LOPEZ** possessed with intent to distribute four hundred (400) grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1). Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation.

**PROBABLE CAUSE**

8. On June 13, 2023, DEA Oklahoma City established surveillance on **LOPEZ**, a suspected money courier for a drug trafficking organization. DEA Oklahoma City observed **LOPEZ** leave her residence, 2224 Miramar Boulevard, Oklahoma City, Oklahoma in a white Jeep Renegade, bearing Oklahoma Temporary License Plate that expired on 05/21/2023. Surveillance observed the Jeep Renegade was occupied by **LOPEZ** and a second individual later identified as A.L. Surveillance observed that the vehicle stopped at an ice cream shop and On-Cue gas station prior to driving south on Interstate 35 from Oklahoma City, Oklahoma. Law enforcement contacted McClain County Sheriff's Office and advised them of the vehicle traveling south on Interstate 35 into McClain County.

9. At approximately 3:15 p.m., Deputy McCraw with the McClain County Sheriff's Office was traveling south on Interstate 35 near mile marker 95. Deputy McCraw observed the same Jeep Renegade traveling south in front of him and observed it change lanes without signaling for a lane change. Deputy McCraw also observed that paper tag on the Jeep Renegade was not secured properly causing the tag to not be visible. Deputy McCraw initiated a traffic on the Jeep Renegade. After the Jeep Renegade came to a stop Deputy McCraw contacted the driver of the Jeep Renegade, **LOPEZ**, and the front seat passenger, A.L. Deputy McCraw explained the violations to **LOPEZ** and requested her driver's license and insurance. While **LOPEZ** was getting her identification Deputy McCraw asked **LOPEZ** where she was going. **LOPEZ** stated she was traveling to Dallas with her girlfriend. Once **LOPEZ** provided Deputy McCraw her identification he requested **LOPEZ** to step back to his patrol vehicle. While in the patrol vehicle, Deputy McCraw spoke with **LOPEZ** while running her driver's license and filling out the proper information on a written warning. While speaking with **LOPEZ**, she advised she was going to Dallas to spend time with her girlfriend for the day. **LOPEZ** advised she would be returning the same day. During the conversation about the trip, **LOPEZ** also stated she booked a hotel her girlfriend liked for the night.

10. Deputy McCraw returned to the Jeep Renegade to get the VIN number due to the vehicle only having a temporary tag. While getting the VIN number Deputy McCraw asked A.L. where they were going, which she replied they were going to Dallas. When Deputy McCraw asked how long they were staying A.L. advised she did not know.

11. Back in the patrol vehicle with **LOPEZ**, Deputy McCraw asked **LOPEZ** if there was anything illegal in the car, which she responded no. Deputy McCraw asked for consent to search the vehicle. Deputy McCraw observed **LOPEZ'** body language change. **LOPEZ** slouched in the seat, put her head down, and stated yes.

12. Deputy McCraw asked **LOPEZ** what would be in the vehicle and she responded "weed". When Deputy McCraw asked how much. **LOPEZ** stated two pounds.

13. Deputy McCraw began a consensual search of the vehicle where he located two large bags of marijuana in a white backpack. Deputy McCraw also located an orange Nike Shoe box, that contained a large vacuum sealed bag, containing smaller clear bags. The bags contained blue pills marked M-30s, which are suspected fentanyl.

14. Based on the packages, my training, experience and previous transactions with other groups that traffic in fentanyl pills, the bags

appeared to be in approximately 1,000 pill increments. Investigators estimate the total amount to be over 20,000 pills. I believe these pills were fentanyl due to my training and experience of seeing and dealing with these fake M-30 pills. In my training and experience, blue M-30 pills stored in large quantities like the pills in this case, almost always contain fentanyl. These pills are generally imported into the United States from Mexico and sold illicitly. The blue M-30 pills are intended to resemble Oxycodone pills.

15. Following the seizure of the pills, **LOPEZ** and A.L. were transported to the McClain County public safety center for further investigation.

16. Once DEA Oklahoma City arrived, SA Jeremy Epp and TFO Timothy Spratt attempted a post Miranda interview of **LOPEZ.** When investigators walked into the room with **LOPEZ** and began explaining who we were, **LOPEZ** spontaneously stated that everything was hers and she wanted an attorney.

17. SA Epp and TFO Spratt later processed the suspected fentanyl which weighed approximately 2,494.4 gross grams and the marijuana, which weighed approximately 973.3 gross grams.

## CONCLUSION

18. Based on these facts, I believe that probable cause exists to show that **LOPEZ** possessed with intent to distribute four hundred (400) grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1).

JEREMY EPP
Special Agent
Drug Enforcement Administration

SWORN AND SUBSCRIBED to before me on this 14th day of June, 2023.

SUZANNE MITCHELL
United States Magistrate Judge